UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Respondent, ) | |
| ) | |
| vs. ) | 06 C 106 |
| ) | |
| ALEX RAMOS, ) | |
| ) | |
| Defendant-Petitioner. ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Alex Ramos to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the motion is denied.

## **BACKGROUND**

Ramos is a former police officer who worked in the Austin district on the west side of Chicago. In 1996, he and several of his co-workers were investigated for narcotics trafficking. Ramos was specifically identified as serving as an escort for cocaine shipments. He was charged with conspiracy, racketeering, extortion in violation of the Hobbs Act, attempting to distribute multiple quantities of cocaine, and possession of a firearm in connection with a drug offense.

The case was tried to a jury; Ramos did not testify. The jury rendered a verdict of guilt on ten counts, and Ramos was sentenced to a period of incarceration of 44 years and four months, a fine of $5000, and three years' supervised release.

Ramos appealed both his conviction and his sentence to the Seventh Circuit. After both were affirmed, he requested a rehearing, which was denied. Thereafter, he petitioned the Supreme Court for a writ of certiorari. His petition was denied by the Supreme Court six days after the Court issued its opinion in <u>United States v. Booker</u>, rendering the federal sentencing guidelines advisory rather than mandatory. 543 U.S. 220, 125 S. Ct. 738 (2005). He then requested a rehearing, raising the question of the effect of <u>Booker</u> on his situation. The court declined to rehear the petition. Ramos then asked the Seventh Circuit to recall its mandate. This request was also summarily denied. Finally, he moved for a rehearing of the request to recall the mandate. Relying upon the Supreme Court's denial of the rehearing of the petition for certiorari, the Court of Appeals denied the motion for a rehearing. Ramos then timely filed a motion under 28 U.S.C. § 2255 collaterally attacking his sentence.

**LEGAL STANDARD**

Section 2255 permits a prisoner to ask the sentencing court to vacate, set aside, or correct a sentence after direct review is completed on the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, or that "the

court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Such collateral relief is only available, however, where the sentence involved a jurisdictional or constitutional error or results in a complete miscarriage of justice. Bischel v. United States, 32 F.3d 259, 263 (7th Cir. 1994). In evaluating a § 2255 petition, the district court must review the record and draw all reasonable inferences in favor of the government. Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992).

A district court need not reach the merits of an issue in a § 2255 proceeding unless it has been raised in a procedurally appropriate manner. See Williams v. United States, 805 F.2d 1301 (7th Cir. 1986). When a defendant fails to raise an available claim during direct review, the doctrine of procedural default normally will bar its consideration in a § 2255 motion. Galbraith v. United States, 313 F.3d 1001, 1006 (7th Cir. 2002). Such a motion is neither a recapitulation of nor a substitute for a direct appeal. See McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996). This general rule is subject to two exceptions: where a defendant can satisfy the "cause and prejudice" test of Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506-07 (1977), and where a defendant can show a fundamental miscarriage of justice. See Sawyer v. Whitley, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518-19 (1992).

To proceed under the first exception, a defendant must show that the failure to present a given issue previously was the result of circumstances outside the defendant's control ("cause") and that the errors of which he complains created actual and substantial disadvantage, such that his entire trial was tainted with error of constitutional proportions ("prejudice"). See, e.g., Coleman v. Thompson, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566 (1991); United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596 (1982). It is not enough for a defendant to make conclusory allegations of cause and prejudice; the burden can only be satisfied by a specific showing of their existence. See, e.g., Norris v. United States, 687 F.2d 899, 900-04 (7th Cir. 1982).

Under the second exception, if a defendant can show a fundamental miscarriage of justice that would result if his claims went unexamined, procedural default will not prevent a court from addressing the merits of a § 2255 motion. See Sawyer, 505 U.S. at 339, 112 S. Ct. at 2518-19. In this context, the phrase "fundamental miscarriage of justice" has been construed to apply only to situations in which a defendant can demonstrate that he is actually innocent of the crime of which he stands convicted. See Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003). Furthermore, if a procedurally defaulted argument does not raise a constitutional issue, it is barred from collateral review. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other

grounds by Castellanos v. United States, 26 F.3d 717, 719-20 (7th Cir. 1994). However, questions of ineffective assistance of counsel are generally exempt from procedural default. Massaro v. United States, 538 U.S. 500, 508-09 (2003). With these principles in mind, we turn our attention to Ramos's motion.

## DISCUSSION

**Ground I**

Ramos's first contention centers on an assertion that he is entitled to a resentencing under Booker. He makes many of the same arguments that he set forth in his petition to the Seventh Circuit to rehear his request for a recall of its mandate. He implicitly argues that his sentence, rendered when the guidelines were still mandatory, stands in violation of his Sixth Amendment rights, thereby creating a constitutional error of law. To support his position, he relies on the Supreme Court's statement in Booker that the Court must apply the case's holding "to all cases on direct review." 543 U.S. at 268, 125 S. Ct. at 769.

Ramos interprets this statement to mean that all defendants whose cases had not completed the direct appeal process at the time of the Court's decision were entitled to be resentenced. However, Booker went on to state that not every sentence "gives rise to a Sixth Amendment violation...[nor will] every appeal lead to a new sentencing hearing." Id. The Seventh Circuit's treatment of the effect of Booker also makes clear

that Ramos's reading is too expansive.  See, e.g., United States v. Paladino, 401 F.3d 471, 483 (7th Cir. 2005); United States v. Lee, 399 F.3d 864, 866 (7th Cir. 2005).  In Paladino, the Seventh Circuit specified that the procedure it set forth to allow limited remands did not automatically entitle every defendant whose appeal was still pending to be resentenced.  401 F.3d at 484.

Ramos was not entitled to the relief he seeks as a matter of right.  He presented his case to the courts that could award the relief he sought.  His requests were denied.  We are in no position to expostulate on the courts' reasons for taking the action that they did nor can we override the conclusions they reached.  Accordingly, Ground I of Ramos's motion does not provide a basis for relief under § 2255.

**Ground II**

In his second ground for relief, Ramos sets his sights on the charges that he violated and conspired to violate 18 U.S.C. § 1962(c) of the Racketeer Influenced & Corrupt Organizations Act ("RICO").  The statute provides, *inter alia*, that it is unlawful for a person who is employed by an enterprise "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...."  In Reves v. Ernst & Young, 507 U.S. 170, 113 S. Ct. 1163 (1993), the Supreme Court established that to participate in an enterprise's affairs for purposes of § 1962(c), an employee must have some ability to direct the affairs of the

enterprise. However, the Court specified that an employee need not have primary responsibility for the direction of the affairs in order to be within the class of persons within the scope of § 1962(c). 507 U.S. at 179, 113 S. Ct. at 1170.

Ramos contends that he was only an officer, not a member of the management of the Chicago Police Department ("CPD"), the enterprise charged in the indictment. Consequently, he urges, he could not conduct or participate in the conduct of the affairs of the CPD through a pattern of racketeering activity and thereby satisfy the test established in <u>Reves</u>. Without satisfaction of this statutory element, says Ramos, this court was without jurisdiction to sentence him on the RICO counts of the indictment. Alternatively, he posits that, by not moving to dismiss these counts, his attorney provided ineffective assistance of counsel and introduced error of constitutional proportions into the proceedings.

Ramos's first argument, addressing as it does the correct interpretation of the RICO statute, could have been brought to the attention of the Court of Appeals in the course of direct review. Because it was not, and because Ramos has not demonstrated that either exception to the doctrine applies in this situation, it is procedurally defaulted and § 2255 review is not available. However, even if that were not the case, this argument would be unavailing. In support of his position, Ramos relies on two Seventh

Circuit cases decided after Reves: United States v. Cummings, 395 F.3d 392, 398 (7th Cir. 2005) and United States v. Swan, 250 F.3d 495, 498 (7th Cir. 2001).

In Cummings, an employee of the Chicago Department of Human Relations ("DHR") concocted a scheme for tracking down people who were trying to avoid creditors. He arranged for friends he had within the Illinois Department of Employment Security ("IDES") to run searches on IDES databases for information about certain debtors. If the searches revealed information about the debtors, the IDES friends would print it out and give it to the DHR employee, who would in turn sell it to collection agencies. The charged RICO enterprise was IDES. The DHR employee and one of the IDES employees went to trial and were convicted of violating § 1962(d) by conspiring to violate § 1962(c). The Seventh Circuit concluded that § 1962(c) liability could not attach to the IDES employee, whom it described as holding "a minor position in the IDES's purchasing department." Id. at 398. The court stated that no evidence advanced by the government indicated that the employee held a position that would allow her to operate or manage the IDES. Id. at 398.

Contrary to Ramos's assertions, Cummings does not hold that only upper-level decisionmakers can participate in the operation or control of an enterprise. Rather, the Seventh Circuit distinguished the activities of the employee of the enterprise that did not give rise to RICO liability, which were peripheral to the IDES's "core functions"

of the business of unemployment insurance, from a hypothetical scenario in which the DHR employee paid not to obtain identifying information about participants but to pay benefits to unqualified recipients or to indicate false payments of employer premiums. The latter could lead to liability under § 1962(d) through violation of § 1962(c). In fact, the Seventh Circuit specifically addressed cases that would be analogous to Ramos's. Cummings, 395 F.3d at 399. In so doing, they called attention to cases that presented situations like the one here, wherein a public official who was not in a top decisionmaker in a government agency was still subject to conviction under RICO for engaging in illegal activity that compromised the proper operation of the agency. See id.; see also United States v. Conn, 769 F.2d 420, 425 (7th Cir. 1985).

Swan provides no more support for Ramos's argument than Cummings. Far from holding that the defendant could not be liable under § 1962©, the court in Swan stated only that the jury should have been specifically instructed as to the circumstances wherein liability would attach. 250 F.3d at 499. The court concluded that the evidence in that case did not support liability, but it did not go so far as to say that no one in a position analogous to Swan's could ever commit a substantive violation under § 1962(c).

Finally, Reves itself specifically disagreed with the gloss that Ramos attempts to place on the "operation or management" test. 507 U.S. at 184, 113 S. Ct. at 1173.

- 9 -

Though the Court did not establish a bright line for determining which employees participate in an enterprise's operation or control, when applied to the facts of this case, Reves clearly indicates that the operative question to be addressed is whether Ramos had some part in directing the affairs of the CPD. See 507 U.S. at 179, 184, 113 S. Ct. at 1170, 1173.

While we do not quarrel with the proposition that an employee must satisfy the "operation or management" test of Reves in order to be convicted under § 1962(c), case law makes clear that the nature of the activity performed by lower-level employees is more germane to a determination of whether an employee participates in the operation of an enterprise than that employee's particular job title. See Cummings, 395 F.3d at 399; Brouwer v. Raffensperger, Hughes & Co., 199 F.3d 961, 967 (7th Cir. 2000). Ramos contends that "*vis a vis* [sic] the police department he simply executed his duties." The idea that a police officer has a duty to escort cocaine couriers is ludicrous; it is apparent from the evidence in this case that Ramos sought to direct the activities of the police department away from protecting the citizens of the city from illegal acts and toward the business of protecting drug dealers in their criminal activities, including deflecting honest police officers from executing their duties. This supplies all the direction necessary to constitute operation of the enterprise of the police department,

at whatever level. Thus, Ramos's argument that he could not be charged with violating RICO would fail even if it were not procedurally defaulted.

As for Ramos's second argument in this ground, ineffective assistance of counsel, the previous discussion demonstrates that it too is unavailing, even if its review is not barred by procedural default after <u>Massaro</u>. 538 U.S. at 508-09. Under the circumstances of this case, any attempt by counsel to dismiss the RICO counts of the indictment would have failed. Counsel does not provide ineffective assistance by failing to advance a losing argument. See <u>Stone v. Farley</u>, 86 F.3D 712, 717 (7th Cir. 1996). Thus, the assertions of ground II do not provide any basis for § 2255 relief.

**Ground III**

Because he carried his service revolver while conducting the drug escorts, Ramos was charged with violating 18 U.S.C. § 924(c), which prohibits a person from carrying a firearm during and in relation to any drug trafficking crime. Ramos claims that the instruction given on the § 924© gun counts of the indictment was confusing on the issue of his legal authority as a police officer to be armed. This argument is nearly identical to one that Ramos raised before the Seventh Circuit. <u>U.S. v. Moore</u>, 363 F.3d 631, 640-41 (7th Cir. 2004). Motions brought under § 2255 are not intended to recapitulate issues addressed on direct appeal; decisions of the appellate court are binding as the law of the case. <u>Daniels v. United States</u>, 26 F.3d 706, 711 (7th Cir. 1994). The appellate court

already considered and addressed this issue on direct appeal. We decline to replow ground already covered by that court. Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995).

**Ground IV**

Ground IV is an amalgam of several different contentions brought by Ramos pro se rather than through his counsel. The government objected to Ramos being able to advance argument both through counsel and pro se, citing United States v. Traeger, 289 F.3d 461, 471 (7th Cir. 2002). Ramos's counsel countered that Traeger is procedurally distinguishable and that the authorship of an argument presented to the court is irrelevant. We disagree with Ramos for two reasons. First, there is no benefit to using scarce judicial resources to compare and sort through potentially redundant, or even conflicting, positions from a single litigant and his or her attorney. Second, there is more to affixing counsel's name to an argument than mere attribution. An attorney, as an officer of the court, is forbidden by Local Rule 83.51.2(f)(2) from advancing claims that the attorney knows to be unwarranted under law in existence at the time, subject to certain exceptions. To do so would risk the attorney's ability to appear before this tribunal in future cases. Though we do not suggest that is what took place in this case, counsel's implication that it is immaterial who puts what argument before the court is

inaccurate. In any event, the arguments he sets forth in Ground IV are either undeveloped or facially meritless. Consequently, they do not warrant § 2255 relief.

## CONCLUSION

The record in this case conclusively shows that Ramos is not entitled to relief, so no hearing is necessary on his claims. His motion to vacate, correct, or set aside his sentence is denied.

_____
Charles P. Kocoras
United States District Judge

Dated:   September 20, 2006